1

wtk

T7135

GOVERNMENT OF THE DISTRICT OF COLUMBIA

DEPARTMENT OF PUBLIC SCHOOLS

OFFICE OF STUDENT HEARINGS

- - - - - - - - - - - - x
                        :
                        :
In the Matter of:       :
                        :
T████  T██████          :
- - - - - - - - - - - - x

Washington, D.C.

Thursday, August 4, 2005

The above-entitled matter came on for

hearing, pursuant to notice.

BEFORE:

FRED WOODS, Hearing Officer

APPEARANCES:

On Behalf of the Student/Parent:

F. BARRIE, ESQ.

On Behalf of D.C. Public Schools:

RASHIDA CHAPMAN, ESQ.

[TRANSCRIPT PREPARED FROM A TAPE RECORDING.]

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

248

2

wtk

## C O N T E N T S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|
| Norma Gales | 53 | 83 | 89 | -- |
| Elaine Smith | 94 | 101 | 111 | -- |
| Anne Warneke | 112 | 115 | 118 | 119 |
| Sharon Millis | 121 | 131 | -- | -- |

## EXHIBITS

Disclosure letters received
from both parties and
admitted to the Record

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

249

3

wtk

# P R O C E E D I N G S

1
2      HEARING OFFICER WOODS:  Good morning, it's
3  Wednesday, no, it's Thursday, August 4. 2005.  My
4  name is Fred Woods, an independent Hearing Officer,
5  convening the due-process hearing for, is it
6  pronounced T██████, T-█████████ is what I have T█████,
7  T-█████████.  And I have, that person who's speaking
8  is Ms. Gales, her mother.  I have her birth day,
9  Ms. Gales, as █████████, 1996?
10     MS. GALES:  That's correct.
11     HEARING OFFICER WOODS:  This hearing is
12 being convened in accordance with the Individuals
13 With Disabilities Education Act, and the Federal
14 and District of Columbia Laws and Regulations that
15 implement the Act.
16     The purpose for this hearing is to
17 determine whether the District of Columbia Public
18 Schools, represented here today by their Attorney
19 Advisor, Ms. Rashida Chapman, complied with those
20 rules.  My role, Ms. Gales, will as the Hearing
21 Officer is to receive the testimony that the
22 parties will provide today and to review the

4

wtk

1   documents that I'll reference in just a moment,

2   that the parties have submitted in advance of this

3   hearing in support of their case and based on that

4   testimony and the review of these documents and the

5   law, excuse me, reach a decision with regard to the

6   issues presented for resolution.

7           That decision is placed in the form of a

8   written Order and provided to you through your

9   attorney within ten days of this hearing date.

10          This hearing, Ms. Gales, is considered a

11  closed hearing; what that means is no one else

12  would be invited into this room, unless they are a

13  witness or party to this case.  If, however, you

14  want this to be an open hearing, meaning anyone is

15  welcome to come in and sit and observe you could

16  just let me know and we'll allow anyone who wants

17  to come in to come in, otherwise, we will keep it a

18  closed hearing.

19          The hearing is, also, being audio recorded

20  and that's what I'm fiddling with here looking at

21  this machine or making sure I can hear everybody

22  through this earphone--headphone, rather.  So, I

5

wtk

1  would prefer that when anyone is speaking if you

2  could be in front of a microphone so we could make

3  sure that we can pick up your voices.

4        Before further explaining, Ms. Gales, how

5  this hearing will proceed, what I'd like to do is

6  allow everyone present to introduce themselves and

7  then visit with the lawyers to see what the issues

8  are at this point, see if anything has been

9  resolved to date.  Let me start with Ms. Barrie?

10        MS. BARRIE:  I'm [unintell.] Barrie,

11  attorney for the mother.

12        MS. GALES:  Helen Gales [ph], mother of

13  T▓▓▓▓ T▓▓▓▓.

14        MS. MILLIS:  Good morning, Sharon Millis,

15  independent special-education expert and advocate.

16        MS. CHAPMAN:  Good morning, Rashida

17  Chapman, Attorney Advisor, DCPS.

18        HEARING OFFICER WOODS:  Good morning to

19  the rest of you.  Always a special welcome to the

20  Parent and the Student when they're here so, this

21  hearing is always about the Parent and the Student

22  as far as IDEA is concerned.

6

wtk

1       Let me start with Ms. Barrie and ask if

2   Ms. Gales has been advised of her due-process

3   rights?

4       MS. BARRIE:  Yes.

5       HEARING OFFICER WOODS:  And would you

6   waive formal reading of those rights here?

7       MS. BARRIE:  Yes.

8       HEARING OFFICER WOODS:  I will admit,

9   unless there are objections--and I'm adding this as

10  I write--not taking the place of any--and

11      MS. CHAPMAN:  Just one exhibit, right?

12      MS. BARRIE:  Right.

13      HEARING OFFICER WOODS:  So, I've received

14  from Ms. Barrie--let me make sure Ms. Gales knows

15  what's going on.  Right now, going to ask if there

16  be any objections to the documents that the parties

17  have submitted to me in advance of the hearing.

18  And I'm going to refer to them as five-day

19  disclosures.

20      I have received from Ms. Barrie 2

21  disclosure letters, both dated July 28, 2005, that,

22  together list 10 witnesses and attach 19 exhibit.

7

wtk

1   Ms. Chapman are you in receipt of that disclosure?

2            MS. CHAPMAN:  I am, no objection.

3            HEARING OFFICER WOODS:  Then those

4   documents are admitted as part of the record.  And

5   what that means, Ms. Gales, is any of these

6   documents can be referred to in this hearing and i

7   can rely on any of these documents in reaching a

8   decision.

9            I've received from Ms. Chapman a

10  disclosure letter dated, July 28, 2005, it lists 5

11  witnesses and attached no exhibits.  Ms. Barrie,

12  are you in receipt of that disclosure?

13           MS. BARRIE:  Yes.

14           HEARING OFFICER WOODS:  Any objections?

15           MS. BARRIE:  No objections.

16           HEARING OFFICER WOODS:  My understanding

17  of the Hearing Request, among the issues here is

18  that there was a request for, I believe, the very

19  first thing here, is there was a

20  recommendation--was that for psychiatric--

21           MS. BARRIE:  Medication--

22           HEARING OFFICER WOODS:  --oh, medication.

8

wtk

1    MS. BARRIE:  --[unintell.] that she may

2    need medication but did not recommend a

3    psychiatric--or seeing a psychiatrist until the

4    medication [unintell.].

5    HEARING OFFICER WOODS:  I see, okay, I

6    misread that then.  So, I better drop down then.

7    So, you're this is--tell me what's at issue, so

8    that we can make sure I'm clear of that.

9    MS. BARRIE:  If I may, there's one

10    preliminary matter before we go ahead that I have.

11    HEARING OFFICER WOODS:  Oh, okay.

12    MS. BARRIE:  I wanted to, on Record,

13    reiterate the written request I had made for the

14    Hearing Officer to recuse himself from the hearing.

15    HEARING OFFICER WOODS:  Okay.  Go ahead

16    and make your record on that.

17    MS. BARRIE:  Okay, I'd like to make a

18    motion for the Hearing Officer to recuse himself

19    from this hearing due to past experiences with this

20    Hearing Officer and [unintell.] has not been, I

21    guess, unbiased in reference to our client or this

22    attorney or this attorney's firm.

9

wtk

1        So, therefore, we are reiterating our

2    written request for the Hearing Officer recuse

3    himself from this hearing.

4        HEARING OFFICER WOODS:  Okay.  The Hearing

5    Officer, obviously, will deny the motion on the

6    grounds that, number one, it's improperly made.

7    The rules specify how such a motion is to be made.

8    Number two, the Hearing Officer will inquire in

9    those cases where you felt the Hearing Officer was

10   biased.  Did you appeal those decisions?

11       MS. BARRIE:  No, I did not.

12       HEARING OFFICER WOODS:  So, you have no

13   ruling as to whether the Hearing Officer was, in

14   fact, biased, is that correct?

15       MS. BARRIE:  It's not a ruling, it's--as

16   far as I'm aware, anyone, according to the rules,

17   any party can make a request for the Hearing

18   Officer to recuse himself.  It's not matter of

19   whether a court has ruled that he Hearing Officer

20   was biased.  It's a matter of whether a party feels

21   that a Hearing Officer

22       [Technical Interruption.]

10

wtk

1          HEARING OFFICER WOODS:    I understand,

2    yeah, but the request has to be founded in fact and

3    law.    The Hearing Officer refers the

4    attorney-of-record to a recent decision of the

5    District Court that basically just dealt with

6    bias--I think the Court went through 20 pages,

7    almost of establishing how the Hearing Officer was

8    not biased and how the record must be made on those

9    grounds.

10          So, there's a recent opinion that really

11    put it out there very clear.    And the Court always

12    begins with the integrity of the Hearing Officer as

13    in this case.    There's been no bias alleged in this

14    case.    I don't know anybody in this case.

15          If there's been any prior case in which

16    the Parent--this counsel because the Parent

17    certainly isn't alleging bias.    This counsel is,

18    and this counsel had a right, if she had raised

19    those issues, which the Court requires you to do to

20    preserve it for an appeal, to so raise it properly

21    and then take it to the Court, because the Hearing

22    Officer, certainly, if he had been biased, someone

11

wtk

1   else could have looked at that issue.

2           So, the Hearing Officer finds these types

3   of requests an interference with the administration

4   of justice and could be possible violative of the

5   Rules of Professional Responsibility, because, if

6   they're not properly made and reserved, then the

7   only way that the Hearing Officer looks at it is as

8   a way to intimidate him in the way he's going to

9   rule in a particular case.

10          So, if the person really wants to make a

11  challenge, there is a process for doing it.  The

12  District Court has just recently laid out and dealt

13  with it extensively.  And I welcome that, because,

14  the good news, Ms. Gales, is any of our decisions

15  are appealable.

16          And the District Court will look over any

17  rulings that are made.  What they expect us to do

18  is to make a Record here and anything that has been

19  made here as a matter of Record that the parties

20  disagree with, they have a right under the IDEIA,

21  which is a new act that was passed, to--they have

22  90 days to bring that case for review before a

12

wtk

1   United States District Court, here in the District

2   of Columbia.

3        But every ruling that I've made in any

4   case with regard to counsel, I've issued a written

5   opinion that decision was appealable.  And there is

6   absolutely--as your counsel has just indicated,

7   she's never appealed one of those decisions.  She

8   certainly hasn't inserted any bias in this

9   particular case.  So, I'm not sure what the basis

10  for the bias would be.

11       MS. BARRIE:  I'm sure that the Hearing

12  Officer [unintell.] that the Hearing Officer has in

13  his Record--and he should--the numerous letters

14  that have been written to the Hearing Officer and

15  to DCPS in reference to in these occurrences.  I'm

16  sure the Hearing Officer is not unaware of--since

17  the Hearing Officer was involved in.  And the

18  letters were clear as to what the issue at hand was

19  then, and has been.  And I'm sure the Hearing

20  Officer is aware, this is not the first time that

21  this issue has been brought up and, however, this

22  is the first time that I've had any response from

13

wtk

1   the Hearing Officer.

2          All the communications that I have had

3   with the Hearing Officer in writing, the Hearing

4   Officer has not deigned to reply to and I'm sure

5   the Hearing Officer is quite aware of that fact.

6          It's not an issue of whether the Hearing

7   Officer's bias as to this case.  It's a belief of

8   this attorney and of the law firm Unintelligible]

9   to previous decisions and previous comments by the

10  Hearing Officer, that he may be harmful to future

11  clients, as far as decisions from the Hearing

12  Officer.

13         If the Hearing Officer feels that he can

14  make a decision in a case unbiased, then, it's his

15  decision to stay on the case.  However, my motion

16  stands and the Hearing Officer can make his

17  decision either way.

18         HEARING OFFICER WOODS:  I'll say it again,

19  the Record reflects that the motion is improperly

20  made.  It's almost asinine to think that a Hearing

21  Officer is going to respond to a letter.  I mean,

22  you wouldn't write a judge at the D.C. Superior

wtk

1   Court and say I think you're biased, you ought to

2   recuse yourself.

3           The procedures for recusing any

4   administrative hearing officer is made as a part of

5   the record. We're not going to respond to letters.

6   That's not a reason--that has no leg--we have no

7   basis to respond to a letter. We're not supposed

8   to have ex-parte communications with any of the

9   parties.

10          That means, once I had a communication

11   with any party to a particular case, we can't

12   respond to a letter. If I ever received the

13   letter. Now, because letters are sent, doesn't

14   mean that I receive them.

15          In this particular case, I've received no

16   letter, not to my knowledge. I don't see one in

17   the file.

18          MS. BARRIE: If I understand correctly

19   another hearing that the Hearing Officer and I had

20   on, I believe Tuesday, it was that same letter that

21   had both that case and this case in one, and there

22   was a motion made to the Hearing Officer and I

15

wtk

1   believe the Hearing Officer made reference to that

2   letter during our hearing on--two days ago.

3           HEARING OFFICER WOODS:  Do you have the

4   letter?

5           MS. BARRIE:  Excuse me?

6           HEARING OFFICER WOODS:  Do you have the

7   letter?

8           MS. BARRIE:  No, I don't.

9           HEARING OFFICER WOODS:  Okay.  And you

10  consider the letter a motion?

11          MS. BARRIE:  That's what I indicated.

12          HEARING OFFICER WOODS:  Okay, not, the

13  Record isn't--

14          MS. BARRIE:  And--

15          HEARING OFFICER WOODS:  --let me, I could

16  get that letter because I think we should put it on

17  the record so that--I know we're wasting time, Ms.

18  Gales, but, since your counsel has raised this, let

19  me see if I can get that letter.  And I don't mind

20  putting--you don't have it?

21          MS. BARRIE:  No, I don't.

22          HEARING OFFICER WOODS:  So we could read

16

wtk

1    it into the Record so it's clear what that

2    letter--and, again, my suggestion would be to write

3    a motion for each case, not a letter, because then

4    I've got to--I don't know if I can actually use a

5    letter because you said you mentioned another child

6    in the letter?

7            MS. BARRIE:  Correct.

8            HEARING OFFICER WOODS:  Yeah that, I won't

9    do that because I cannot use the name of another

10   child in this particular hearing.  But the motion

11   is not proper before the Hearing Officer.  The

12   Hearing Officer--there's no authority under the

13   IDEA for him to respond too--first of all even

14   receive letters; let alone respond to any letters.

15           The proper way for a Hearing Officer to

16   consider whether or not he would be biased in a

17   particular decision is laid out in the rules

18   governing due-process hearings, those procedures

19   have not been followed in this particular case.

20   There's absolutely no issue raised, even in the

21   arguments of counsel at this point with regard to

22   any bias with regard to conflict of interest, I'm

wtk

17

1  not even sure what the basis is for the bias in

2  this particular case.

3      So, there's absolutely no way for me to

4  rule and it's very difficult to preserve an issue

5  when you haven't properly raised the issue.  And as

6  the Hearing Officer so indicated, there are

7  procedures for filing the motion.  And you've have

8  to file it specific to a particular case.  And if I

9  rule against the Parent, that, then, is preserved

10 so that the District Court--in other words, I'm not

11 the last word.

12     But I think, to the credit of this Hearing

13 Officer, if he's issued decisions, as Ms. Barrie

14 has indicated he did and she didn't appeal them,

15 I'm not sure how you can then say that there was

16 bias in another case that you didn't effectuate the

17 rights of those parents.

18     MS. BARRIE:  Mr. Hearing Officer, you're

19 bringing in issues that have absolutely nothing to

20 do with the motion that I've made.  It's either

21 denied or you approve it.  It's not referring to

22 what I may or may not have done for the parents,

18

1  it's a matter of whether you will agree or not

2  agree to the motion, that's all I brought in here

3  today.  It's not an issue what I may or may not

4  have done for a client.

5        HEARING OFFICER WOODS:  Ms. Barrie, that

6  was the basis of your motion.

7        MS. BARRIE:  Right, but it's not what I

8  may have done for a client.  The basis for my

9  motion is--was and still is in reference to the

10  Hearing Office recusing himself, not about what me

11  or anyone in my office may have done for a previous

12  client.

13        HEARING OFFICER WOODS:  Whose in your

14  office, by the way as lawyers, since I am unaware

15  of any other lawyers in your office that practice

16  here.  Who are the lawyers in your office?

17        MS. BARRIE:  I'm not going to mention

18  anyone's name on record on a hearing where the

19  person is not even here, Mr. Hearing Officer.

20  We're going out of where we were supposed to stay.

21        And any Hearing Officer that they stay

22  within the box of yes or no and the Hearing Officer

wtk

1    is not supposed to try to find out who is in the

2    office and who is not in the office.    [unintell.]

3              HEARING OFFICER WOODS:    That's the basis

4    for your bias, Ms.--

5              HEARING OFFICER WOODS:    Whoever is in

6    there, Mr. Hearing Officer, either you're going to

7    agree or you're not and if you're not, then we can

8    just continue with the hearing.

9              HEARING OFFICER WOODS:    Then, don't waste

10   our time.    If you're not wiling to engage in a

11   dialogue--in a motion of this importance, the Court

12   requires us to make a Record.

13             MS. BARRIE:    And a record is being made,

14   I'm sure you can write a fair record from the

15   discussion that we've had.

16             HEARING OFFICER WOODS:    Okay.    The, again,

17   the claim is unfounded in that there's claimed bias

18   of people in a law firm, yet no mention of who the

19   lawyers are in the law firm that I'm biased against

20   or any specifics with regard to incidents of bias

21   and, clearly--

22             MS. BARRIE:    [unintell.] mention--

wtk

1          HEARING OFFICER WOODS:  --let me finish--

2          MS. BARRIE:  --any names, Mr. Hearing

3    Officer, but I have had hearings where you have

4    verbally told the Parent that it's not brain

5    surgery, and the Parent should have just contacted

6    the school.  That's one.  Number two, you have

7    interrogated Parents, my clients as to legal

8    issues, i.e., to explain to you the harm of whether

9    whatever may or may not have happened with a

10   student and I named students on record with this

11   case.  [unintell.] there are two instances that are

12   documented, I've notified you of those incidents,

13   I've notified the Hearing Office of those

14   incidents, it's not [unintell.].

15          You can go on record and pretend like this

16   is brand-new, but it's not, Mr. Hearing Officer and

17   I'm sure you're quite aware of--I do not want to

18   prolong the case--this hearing any longer than it

19   has been.

20          I've stated my motion.  I've stated my

21   reason for believing what I believe.  And the

22   Hearing Officer can decide yeah, or nay and we can

21

wtk

1    move forward with the hearing as opposed to

2    prolonging this--it's already 10:00 o'clock.  We've

3    been here since before 9:00 o'clock waiting for the

4    Hearing Officer.

5         We did not start the hearing until after

6    9:30 and we are still waiting.  The Hearing Officer

7    just had to rule on my motion and that's all, so we

8    can continue.

9         HEARING OFFICER WOODS:  Counsel has the

10   right to make her arguments, but not the right to

11   tell the Hearing Officer how to run the meeting.

12   And the Hearing Officer is making his record very

13   clear.  This is the only way that the Hearing

14   Officer can make clear what his position is in a

15   particular case.  He can't write letters to the

16   United States District Court and say to the Judge,

17   here's what he was thinking or here's what he was

18   saying.

19        Again, the Hearing Officer does not recall

20   receiving letters from Parent counsel and certainly

21   doesn't recall receiving any motions with regard to

22   recusing himself from a particular case and the

22

wtk

1  Hearing Officer finds absolutely no basis on the

2  motion or the oral motion that is not properly

3  made, because that's violative of the rules as to

4  how the motion is to be made.  He finds no basis,

5  even though he's considered the oral motion as to

6  any reason to recuse himself.

7          And, again, will refer counsel to the

8  recent opinion of the United States District Court

9  where the same issue was raised.  Unfortunately, it

10  was not against this Hearing Officer, but it was

11  against another Hearing Officer and the judge for

12  about ten pages just went through, I think, just to

13  deal with this issue once and for all, here's what

14  you're going to have to establish and found in

15  fact, there was no bias.

16          So, that motion is denied.

17          Now, with respect to the issues for

18  resolution.  And, again, I started, probably, with

19  the one that I misunderstood, I thought that you

20  would want an evaluation, but it appears that you--

21          MS. BARRIE:  [unintell.].

22          HEARING OFFICER WOODS:  Okay, you don't?

23

wtk

1          MS. BARRIE:  We do.

2          HEARING OFFICER WOODS:  You do?

3          MS. BARRIE:  Yes.

4          HEARING OFFICER WOODS:  Let me finish

5    first, through, I want to get everything--So you do

6    want a psychiatric?

7          MS. BARRIE:  Yes.

8          HEARING OFFICER WOODS:  And the second

9    thing is they failed to--

10          MS. BARRIE:  Provide here with appropriate

11   related services and we don't have any evidence

12   that she has been provided with all related

13   services.  And as a result, we're asking for

14   compensatory-education in relation [unintell.]

15   services, which is--

16          HEARING OFFICER WOODS:  Which, let me slow

17   you down.  What services she was due and she didn't

18   get?

19          MS. BARRIE:  She was due a

20   speech-and-language and psychological services.

21   And [unintell.] informs the mother that, she's not

22   [unintell.].

wtk

1          HEARING OFFICER WOODS:  In what school

2  year?

3          MS. BARRIE:  I'm sorry?

4          HEARING OFFICER WOODS:  What school year?

5          MS. BARRIE:  She's been there two, three

6  years--

7          HEARING OFFICER WOODS:  Well, what school

8  year is this claim for?

9          MS. BARRIE:  Our claims are going back to

10  2002, 2003.

11          HEARING OFFICER WOODS:  So, in the past

12  three school years--

13          MS. BARRIE:  Correct.

14          [Technical Interruption.]

15          MS. BARRIE:  [unintell.] have not been

16  appropriate for her [unintell.] ADHD and also her

17  behavior plans have been remaining much the same,

18  which means they're not working for her.

19          HEARING OFFICER WOODS:  Say that again.

20          MS. BARRIE:  Her behavior plans have not

21  been working, therefore they are inappropriate.

22          HEARING OFFICER WOODS:  Plans or plan?

25

wtk

1    MS. BARRIE:  Well, I believe she's had two

2    plans.

3    HEARING OFFICER WOODS:  So, what years are

4    we talking about here?

5    MS. BARRIE:  Well, she's had that for the

6    last two years, previously, she didn't have any

7    [unintell.]

8    [Technical Interruption.]

9    MS. BARRIE:  Previously she [unintell.]

10   and further more, she was not getting the

11   appropriate related services as indicated

12   previously to accommodate her ADHD situation.

13   And they have failed to provide her with

14   an appropriate IEP since 2002 when they found out

15   she was ADHD.  Her IEP has not included the

16   classification of ADHD the entire time.  Her goals

17   have not addressed the ADHD disability the entire

18   time.  Her goals have stayed the same. And they've

19   failed so far to [unintell.] meeting.

20   HEARING OFFICER WOODS:  What year was

21   that?

22   MS. BARRIE:  I've been trying to get an

wtk

1    appropriate one for the past two years.

2              [Simultaneous conversation.]

3         MS. BARRIE:  They don't ever really

4    discuss other schools--the [unintell.] will write

5    it down, but the next year she's staying here.

6    They recently had a meeting and that's the

7    supplemental the new IEP from August 2, 2005, in

8    which they determined that she needs a complete

9    program, but they didn't have a placement for her

10   at the time, so she needs a placement ASAP, a new

11   placement.

12             And they failed to provide her with an

13   appropriate placement--well, we're going back five

14   years, because of the statute of limitation,

15   however, I do have case law that indicates that if

16   the Student has been denied there is no limitation

17   on student compensatory-education, if it is owed.

18   And the case law is--there hasn't been a case law

19   from 2005 of this school year, which indicates that

20   comp-ed is unlimited--cannot--should and cannot be

21   limited because the Parent was not able to--or did

22   not invoke the right to compensatory-education.

wtk

1  But either way, there's a comp-ed issue.  I'm sorry

2  appropriate placement for a minimum of the past

3  three years.  She has never received an appropriate

4  placement.  And that would be clear by what the

5  Parent's testimony and Ms. [unintell.] testimony in

6  reference to her progress, both academic and

7  behavioral.

8           And, furthermore, encounter/tracker forms

9  going back to 2002, we've been requesting, we have

10  not received as of yet.  That's No. 6 and that's in

11  reference to 300.501  and [unintell.] No. 7

12  encompasses everything in reference to not

13  evaluating her within appropriate time to determine

14  here eligibility.  Because the mother took it upon

15  herself, even though her behavioral was

16  inappropriate at the school, the school did not

17  provide her with appropriate services--the mother

18  took it upon herself to have an evaluation

19  completed in 2002.

20           DCPS reviewed it in 2003 and it took about

21  a year before they reviewed the evaluation and

22  completed an IEP or an initial IEP for her.

28

wtk

1          HEARING OFFICER WOODS:  Where is that one

2  at?

3          MS. BARRIE:  I'm sorry, what number?

4          HEARING OFFICER WOODS:  Yeah.

5          MS. BARRIE:  Oh, that's No. 7, her first

6  [unintell.] to comp-ed because it violated Child

7  Find.  Even though she had issues from the

8  beginning.  And the mother took it upon herself in

9  2002 to do an evaluation on her own.  And DCPS

10  reviewed it and that's in the documents.

11          HEARING OFFICER WOODS:  Is this child a

12  disabled child at this point?

13          MS. BARRIE:  Yes, she's an ED Student.

14          HEARING OFFICER WOODS:  Oh, I see.

15          MS. BARRIE:  And she has an IEP.  She's an

16  ED Student now.

17          HEARING OFFICER WOODS:  Anything else?

18          MS. BARRIE:  No, but just to--can I put it

19  all into my opening or just the clarification?

20          HEARING OFFICER WOODS:  Let me, I need Ms.

21  Rashida, I mean, Ms. Chapman to--okay--let's

22  because the things that we don't dispute, we need

wtk

1   to get out of the dispute.  Request for a

2   psychia--or is it a request or a need for?

3            MS. BARRIE:  Both, it's needed.

4            MS. CHAPMAN:  We're disputing that.

5            HEARING OFFICER WOODS:  I see.

6            MS. CHAPMAN:  We are definitely disputing

7   the psychiatric.  The No. 2, what I have listed as

8   Parent's No. 2, failed to provide related services

9   encounter/tracker forms; we are disputing that, as

10  well.  There's no date even in the issues, it just

11  said on No. 6, one, it's not listed in how you

12  would like to see the problem corrected, which is

13  the relief that the Petitioner's seeking, there's

14  nothing on here to provide the encounter/tracker

15  form, that's the first thing.

16           But even if the Hearing Office deems that

17  as an issue that needs to be adjudicated today,

18  then we're not disputing that.

19           Three, behavior modification plan.  I can

20  just say that this Hearing Request is bit--it's

21  somewhat difficult in terms of flow.  And there are

22  a lot of issues--a lot of relevant facts.  But when

30

wtk

1  you get down to state how you would like to see the

2  problem corrected, which is the remedy/relief that

3  they're seeking, there's nothing in here about

4  behavior modification plans.  Similarly, DCPS to

5  develop an appropriate IEP is all that is listed.

6  All of the additional things that Petitioner--that

7  counsel has stated, are not on that section.

8        But, again, if the Hearing Officer deems

9  that that's something that we need to deal with,

10 then, again, that's not an issue that we are

11 conceding.

12       The IEP since 2002, I mean, it's our

13 contention that the Student does have an

14 appropriate IEP.  So, that, again, is nothing that

15 we are conceding.

16       Placement, I'm a bit confused as to what

17 the Parent is saying that she's never been a

18 participant in a meeting where placement was

19 discussed or because she's not gotten the placement

20 she wanted to date.  That's the claim, I mean,

21 certainly--or I'm still confused as to what that

22 means, I mean, state how you'd like to see the

31

wtk

1   problem corrected, there is the claim to fund the

2   Student at a private placement and so, I don't know

3   if that's the area of that claim.

4          And, then, the compensatory-education,

5   anything beyond five years, I'm objecting to--I've

6   not seen this case law, counsel's not made me aware

7   of this particular case prior to the hearing, so

8   I've not had an opportunity to read it and research

9   it and figure out what DCPS's response would be or

10  any subsequent case law, so, I would ask that the

11  Hearing Officer not--if you were to get to the

12  point to find a denial of faith and were to look

13  for compensatory-education, certainly this

14  additional case law, unless you're going to give

15  DCPS additional time to read the case law and do

16  their own research that you not go beyond three

17  years.

18          HEARING OFFICER WOODS:  Okay.  I'm not

19  sure if I'm on this--do you have witnesses that--

20          MS. CHAPMAN:  I do, I have one witness.

21          HEARING OFFICER WOODS:  And, just for

22  proffer as to these issues, which ones are they

32

wtk

1  going to deal with?

2          MS. CHAPMAN:  Sure.  The witness that I

3  have will deal with the psychiatric medication

4  part.  The witness that I have will deal with the

5  failure to provide encounter/tracker forms; will

6  deal with the IEP; with the current IEP and will

7  deal with the placement issue.  She can also speak

8  to the comp-ed piece ever so slightly as it relates

9  to the missed services.  So, those two will tie in

10  together.

11          HEARING OFFICER WOODS:  Okay.

12          MS. CHAPMAN:  And--

13          HEARING OFFICER WOODS:  Go ahead, I'm

14  sorry.

15          MS. CHAPMAN:  The behavior modification

16  plan, I think that just in terms of her being able

17  to speak to the related services we'll be able to

18  address that, as well.

19          HEARING OFFICER WOODS:  Okay.  Just so

20  that--if that witness could address the mother's

21  issue, she wanted clarity on--is it the mother

22  saying she didn't get the placement or the mother

wtk

1    was not invited to the meeting?    What is that that

2    the--

3            MS. BARRIE:    No, she was at the meeting,

4    they never actually discussed the placements that

5    the mom proposed.

6            HEARING OFFICER WOODS:    Okay, so that's--

7            MS. BARRIE:    That's why I said that's not

8    an appropriate meeting because they never really

9    addressed it.    They would say, okay, the mother is

10    demanding Accotink, but or Kennedy, but just write

11    it down and don't really address the mom's

12    concerns.

13            MS. CHAPMAN:    If I could just

14    interject--which is clear in TT-19, the meeting

15    notes from the most recent meeting, it's indicated

16    in there that they will come back to the table to

17    discuss placement.    So, it's not as if the Parent

18    has--and the Parent will clearly be invited to that

19    process.    So, the Parent has not been excluded from

20    any placement meeting.    Nor, has the Parent been

21    denied her right to present specific placements at

22    a placement meeting.    That placement meeting, just

wtk

1    h as not occurred yet.  I need to document it in

2    the notes.

3              HEARING OFFICER WOODS:  I thought this was

4    for the last two years?

5              MS. CHAPMAN:  Well, that was part of my

6    clarity and what she just said is that the--what

7    you just said was referring to the most recent

8    meeting.

9              MS. BARRIE:  Going back to [unintell.]

10             [Technical Interruption.]

11             MS. BARRIE:  [unintell.]

12             [Technical Interruption.]

13             MS. BARRIE:  --her concerns or [unintell.]

14   she recommends--the rules are clear that

15   [unintell.] the Parent proposes a placement then

16   it's incumbent upon the school system to indicate

17   to the Parent why their school cannot [unintell.]

18   and vice versa, if they decide [unintell.]

19             But in [unintell.]--19, assess a

20   placement, what it did say that it was sending the

21   documents over here [unintell.] to decide a

22   placement for her.  So, it's not a matter of--at

35

wtk

1  --19 they did not decide a placement.  They did not

2  really discuss placements at different schools,

3  they indicated they were sending a packet over to

4  825 so that they can decide up here what school she

5  would be assigned.

6       HEARING OFFICER WOODS:  And did the

7  mother--is there--since she probably looked at

8  this, I haven't, was there a place in here where

9  the mother said, hey, I want you to consider X--

10      MS. BARRIE:  Yes.

11      MS. CHAPMAN:  I'd just like to--

12      HEARING OFFICER WOODS:  And that's in

13  there, then that's what they're saying.

14      MS. CHAPMAN:  Well, I'd like to clarify in

15  terms of the process because I think counsel is

16  kind of misstating the situation.  To say that we

17  will--she said send it to another place to get some

18  placements.  That is not a placement meeting.  That

19  does not determine the Student's final placement.

20  You then come back to the table.  The Parent is

21  free to--it's a limit, okay, this is our placement,

22  we can discuss however many placements, including

36

wtk

1  the Parent's placement, and then, based upon that.

2  So, it's not as if the placement is predetermined,

3  there's no meeting--if that's the case, then there

4  would be no meeting.

5       That's not the process at all, but we've

6  got people that can look at the child's disability

7  and then say, okay, these are the centers or these

8  are the places that we have that can meet the

9  child's needs, so these are the ones that you can

10 go back--and that's also even reflected in the

11 notes from a prior meeting and the Parent being

12 advised of what was going to happen and the mom

13 being in agreement with that process.

14      So, I don't to say--that's somewhat of a

15 change to say that we just had a placement without

16 the Parent.  No placement has been determined for

17 the Student.  There's not been a Prior Notice of

18 Placement issued.  In the notes, it is reflected

19 that we will come back to the table for the sole

20 purpose of discussing placement.  So there's been,

21 the Parent has not been excluded from a placement

22 meeting, certainly, for this school year.

wtk                                                                    37

1              HEARING OFFICER WOODS:  Okay.  Let me,

2    because that particular issue will need to be

3    really clear to me to be resolved.  And I want to

4    make sure that as you prepare your witness, you

5    understand what I understand Ms. Barrie's concerns

6    are.  No. 1, the psychiatric was both needed and

7    requested and not provided.

8              MS. CHAPMAN:  Mm-hmm.

9              HEARING OFFICER WOODS:  So the witness

10   would need to either address that or because or

11   give her the psychiatric.

12             MS. CHAPMAN:  Right.

13             HEARING OFFICER WOODS:  You don't have to

14   respond at this particular, go ahead.

15             MS. CHAPMAN:  I'm sorry, I just wanted you

16   to clarify that one issue because what I wrote down

17   when Ms. Barrie was talking about the psychiatric

18   was medication, because it centered around the

19   issue of medication.  And since the psychiatrist

20   would be a person that could prescribe the

21   medication, clearly, then that was the basis for

22   it.  I mean, that was something that she said.  So,

wtk

1    it wasn't just the--

2            HEARING OFFICER WOODS:  Is that right?

3        MS. CHAPMAN:  Which my witness will deal

4    with, but I just wanted to make sure we had that.

5            HEARING OFFICER WOODS:  Is that right?

6        MS. BARRIE:  The psychologist indicated

7    that she may need medication.  But they need a

8    psychiatrist--they need a psychiatric evaluation

9    for them to [unintell.] medication or what type of

10   medication that's warranted.  And, as indicated,

11   previously, also, she's supposed to be ADHD, but

12   for them to even put it on her IEP, I mean, it's

13   only on the IEP that the ADHD impairs her ability

14   to succeed.  Impairs her academic and her

15   emotionality and behavior.  They've said all over

16   in every meeting notes in April 2005 and August of

17   2005.  They indicated as such, but no psychiatric--

18           HEARING OFFICER WOODS:  So, the

19   psychiatric for medication and diagnosis of ADHD?

20       MS. BARRIE:  Right, determining how the

21   ADHD affects her academically and determining how

22   to put it on the IEP.  Because they need that

wtk

1  psychiatric for Dr. Taylor-Davis to review and

2  determine if it is an issue or not to go on the

3  IEP, because it's affecting her so much, according

4  to the school system.

5        HEARING OFFICER WOODS:  Okay, and then, I

6  think, providing services from the last three

7  schools years and those particular services are

8  speech-and-language and counseling?

9        MS. BARRIE:  Yes.

10        HEARING OFFICER WOODS:  The behavior

11  intervention plan has not worked for the past two

12  years.

13        MS. BARRIE:  Exactly.

14        HEARING OFFICER WOODS:  The IEP is not

15  appropriate, in part, because it hasn't dealt with

16  the Student's ADHD; the placement for the last

17  three years has been inappropriate.  I think the

18  one that I want to make sure we're clear on, now, I

19  believe it's the mother was not able to participate

20  in the MDT meeting for the last two--

21        MS. BARRIE:  [unintell.] not that she

22  wasn't able to be there--she was there--

wtk                                                                40

1          HEARING OFFICER WOODS:  And it's not

2     appropriate because she--they did not consider her

3     placement options?

4          MS. BARRIE:  Right, she would bring up a

5     placement option, but they wouldn't really discuss

6     why not and, by law that's what they're supposed to

7     do and [unintell.] when a Parent sits down at a

8     table anytime and recommends some proposes a school

9     placement, that a full discussion must occur in

10    reference too--I mean, in the end, of course, the

11    system has the right to make that decision.  The

12    Parent doesn't have an automatic right to a

13    placement, unless, of course the school system

14    cannot provide an appropriate placement.  And in

15    this case, they clearly have not provided an

16    appropriate placement.

17         HEARING OFFICER WOODS:  Just one other

18    quick thing, because if this is in the Record, I'm

19    not sure what the testimony's going to--

20         MS. CHAPMAN:  I'm sorry, I just wanted to

21    clarify one more thing, in terms of the

22    encounter/tracker forms.  There's no claim in here

wtk

1   that we failed to provide encounter/tracker forms,

2   since 2002.  The line No. 6 failed to adhere to

3   statute by not providing the Parent with the

4   encounter/tracker forms.  But it doesn't give us

5   school years or dates.

6          MS. BARRIE:  The reference to 2002 is

7   because we have not been able to prove that for the

8   past five years that we have provided her with the

9   services. And the only way they could do that would

10  be with the encounter/tracker forms, to show that

11  things have been done for her.

12         MS. CHAPMAN:  But I have the appropriate

13  placement for the last five years.  I don't have

14  services.

15         MS. BARRIE:  2002 for the placement five

16  years [unintell.] appropriate services and to

17  address her behavior since ADHD.

18         MS. CHAPMAN:  No, that's failure to

19  develop an appropriate IEP, but there's nothing in

20  here that says--outlines a time, which we failed to

21  provide the appropriate services for the

22  encounter/tracker forms.  So, I mean, I don't know

wtk

1    what.   That's a little too lose for me.   I don't

2    know what the time is and I would say now that she

3    not be able to amend her Hearing Request at the

4    table.  So, I mean, I have a witness that will be

5    able to speak to the encounter/tracker forms for

6    the '05/'06 school year.   I'm not on notice of

7    prior years that I would need to provide that for.

8                HEARING OFFICER WOODS:   Well, if you

9    limited it to this year, is that a problem?

10               MS. BARRIE:   Well, yes--

11               HEARING OFFICER WOODS:   And that is not.

12   she's saying you don't specify it--

13               MS. BARRIE:   Even if she does commit it to

14   just this year, there's nothing in the Record to

15   show the encounter/tracker forms are in [unintell.]

16               HEARING OFFICER WOODS:   How about is

17   there, in your submission, like, a request for

18   them?

19               MS. BARRIE:   Only from meetings, just

20   during meetings.

21               HEARING OFFICER WOODS:   Okay, because I

22   could have used that as a date, but--

wtk                                                                    43

1              MS. BARRIE:   [unintell.].   When we go to

2    meetings, we ask for the encounter/tracker forms.

3              HEARING OFFICER WOODS:   So, whatever time

4    period is in those meeting notes could be the

5    basis.   But you're prepared for this year, I mean,

6    at least at issue would be this year?

7              MS. CHAPMAN:   Correct and I do think that

8    it's in the notes of what we was just the

9    amended--a supplemental disclosure, I'm just trying

10   to find the line, because I do believe that at that

11   meeting is when the encounter/tracker forms were

12   provided.   And I'm looking to find that line in the

13   notes.

14             HEARING OFFICER WOODS:   What meeting

15   notes?

16             MS. CHAPMAN:   The meeting, the TT-19, the

17   supplemental; there was a recent meeting held this

18   week, actually.

19             HEARING OFFICER WOODS:   I see.   Oh, I see,

20   8/12.

21             MS. CHAPMAN:   Mm-hmm.

22             HEARING OFFICER WOODS:   Oh, it says, it's

wtk

1    on Page, let me see, that's the notes begin when

2    you get to that part and there's the signature

3    page--

4            MS. CHAPMAN:  Mm-hmm--oh, right.

5            HEARING OFFICER WOODS:   --and then--count

6    back 1, 2, 3, on the 4th page the advocate was

7    given a copy of the encounter/tracker forms.

8            MS. CHAPMAN:  Mm-hmm.

9            HEARING OFFICER WOODS:   It's in the middle

10   of that page, the advocate was given a copy of the

11   4/29/05 2004/2005 school year tracker forms.  Are

12   you the advocate?  Who's the advocate?  Well you,

13   okay.  Does that change anything, she's saying that

14   you've got them?

15           MS. BARRIE:  That doesn't change anything

16   really because there's nothing, even in the notes

17   there's nothing stating what encounter--what type

18   of services, how many of them were there--

19           MS. CHAPMAN:  It does.

20           MS. BARRIE:  For what services?

21           MS. CHAPMAN:  It says for the '04/'05

22   school year for all service providers, so that

wtk                                                                        45

1    specifically  says--

2            MS. BARRIE:  All service providers, but

3    it's not in evidence.  Nobody has disclosed it

4    [unintell.] what was done, what wasn't.

5            MS. CHAPMAN:  Well, I mean--

6            MS. BARRIE:  I mean, on that--

7            MS. CHAPMAN:  This is in the Parent's

8    disclosure, this is not in my disclosure, it's in

9    the Parent's disclosure.

10            MS. BARRIE:  That's not the point, though,

11   my point is whether or not the services have been

12   provided.  Whether they be the encounter/tracker

13   forms is another one.

14            MS. CHAPMAN:  But that is one of your

15   claims.

16            HEARING OFFICER WOODS:  But that is one of

17   your issues.  Do you want to drop that?

18            MS. BARRIE:  No, I don't want to drop

19   that.

20            HEARING OFFICER WOODS:  Not whether they

21   provided the services, you raised that plus--

22            MS. BARRIE:  Okay, right.

wtk                                                                     46

1            HEARING OFFICER WOODS:   She's saying well,

2    if you've got--

3            MS. BARRIE:   We haven't been given all of

4    them as far as I'm aware, they haven't given all of

5    the encounter/tracker forms, not as far as I'm

6    aware.   Not to my knowledge.

7            HEARING OFFICER WOODS:   Does that advocate

8    work for you?

9            MS. BARRIE:   Yes.

10           HEARING OFFICER WOODS:   Okay.

11           MS. CHAPMAN:   Well, I mean, certainly,

12   DCPS's position is that that issue, in terms of the

13   actual production of the forms should be an issue

14   that is not one that we adjudicate today, it's in

15   the Parent's own exhibit, it's 5, they were given

16   to a representative of the Parent, the advocate

17   that works with the law firm, that represents the

18   Parent and it specifies the duration and it's by

19   saying the '04/'05 school year; it also says for

20   all service providers.

21           HEARING OFFICER WOODS:   Okay, well, again,

22   I'll look at the evidence as it's being provided.

wtk                                                                    47

1          MS. CHAPMAN:  Okay.

2          HEARING OFFICER WOODS:  So, are we ready?

3          MS. CHAPMAN:  Yes, but at this time,

4    before testimony, DCPS would like to invoke the

5    Witness Rule.

6          HEARING OFFICER WOODS:  Okay.

7          HEARING OFFICER WOODS:  Yeah, because the

8    Parent can stay.  Ms. Millis, I think 8000 or any

9    open room is--

10         MS. MILLIS:  I'll just--

11         HEARING OFFICER WOODS:  All right.  I'm

12   sorry, Ms. Gales, what invoking the Rule on

13   Witnesses means is that any witness that is going

14   to testify in this case is being asked to leave the

15   room until which time they would give their

16   testimony.  But the people who would be allowed to

17   stay would, of course, be you and the Student,

18   Tiara, if she were here and if DCPS had multiple

19   witnesses, at least one of them could stay.  And

20   what we would do is call Ms. Millis in when Ms.

21   Barrie is prepared to receive her testimony.  And

22   we'll take just a second to--

wtk                                                                48

1            MS. CHAPMAN:   And I do have an 11:00

2     o'clock and a 1:00 and a 3:00.

3            [Break.]

4            HEARING OFFICER WOODS:   Okay, Ms. Chapman,

5     we're back on the Record.

6            HEARING OFFICER WOODS:   We're back on the

7     Record.   Okay, Ms. Chapman, we're back on the

8     Record here ready to proceed with your

9     case-in-chief.   Have you been able to get your

10    witness on the phone?

11           MS. CHAPMAN:   I have not.   Through a

12    couple of attempts through a cell phone, I have not

13    been able to get in touch with my witness.   I spoke

14    to her about 9:25 and told her that the hearing was

15    about to start and that I'd be calling her shortly

16    for her testimony.   It is now 10:35 and I've tried

17    to call her and gotten her voicemails on each

18    attempt.

19           HEARING OFFICER WOODS:   What's your

20    pleasure?

21           MS. CHAPMAN:   At this point, I would like

22    to make a proffer as to her testimony on only one

wtk                                                                    49

1   issue and then just make my argument based upon the

2   Record for the additional issues.

3          HEARING OFFICER WOODS:   Ms. Barrie I would

4   have objection to a proffer being made [unintell.]

5          HEARING OFFICER WOODS:   Any response to

6   that?

7          MS. CHAPMAN:   Yes, I mean, I would

8   request--ask the Hearing Officer in his discretion

9   to allow the proffer.   As I said it is to one claim

10  and it can be supplemented by the Record and

11  testimony--cross-examination testimony so,

12  actually, you know what?   Strike that.   What I will

13  do regarding that claim is that I will call Ms.

14  Gales as our first witness and that will able to--

15         HEARING OFFICER WOODS:   The mother?

16         MS. CHAPMAN:   Yes.

17         HEARING OFFICER WOODS:   Okay.

18         MS. CHAPMAN:   That's what I will do.

19         HEARING OFFICER WOODS:   So, you're

20  withdrawing your--

21         MS. CHAPMAN:   I'll withdraw the proffer at

22  this time and I will call Ms. Gales as my first