**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| T.T. et al | * | |
|     Plaintiffs | * | |
| | * | |
| v. | * | Civil Action No. 05-2259 (RMC) |
| | * | |
| | * | |
| DISTRICT OF COLUMBIA, et al | * | |
|     Defendants(s) | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiffs, T.T., a minor and Norma Gales, by and through their attorneys Jude C. Iweanoge and IWEANOGE LAW CENTER, hereby moves this Honorable Court for summary judgment in favor of the Plaintiff as to all counts. As reasons therefore, Plaintiffs will establish that there exist no triable issues of material fact and that Plaintiffs are entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support thereof, Plaintiffs, incorporate by reference the attached Memorandum of Points and Authorities.

WHEREFORE, Plaintiffs pray this Honorable Court to grant this Motion and enter summary judgment in favor of Plaintiffs as to all counts of the complaint.

                Respectfully submitted
                IWEANOGE LAW CENTER.


            By:   /s/JudeIweanoge/s/
                Jude C. Iweanoge, Bar #493241
                IWEANOGE LAW CENTER
                1026 Monroe Street, NE
                Washington, D.C. 20017
                Phone: (202) 347-7026
                Fax: (202) 347-7108
                Email: jci@iweanogesfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

T.T., et al                              *
       Plaintiffs              *
                                *
  v.                               *
                                *     Civil Action No. 05-2259 (RMC)
                                *
DISTRICT OF COLUMBIA, et al              *
       Defendants(s)            *
*************************************

### MEMORANDA OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

For reasons set forth herein, Plaintiffs are entitled to summary judgment as to all counts. The undisputed material facts of this case will establish, inter alia, that (i) the Plaintiff is eligible for special education services, (ii) DCPS violated the child find statute and the 120-day time line and did not test/evaluate Plaintiff in all suspected areas of disability; (iii) DCPS violated IDEA by deciding that a placement decision would be made by the site review committee and as such denying the parent the right to participate in the placement decision, (iv) the Plaintiff was diagnosed with ODD, Speech Disorder, ADHD and Learning Disorder NOS which affects her education; and (v) the hearing examiner failed to independently review the record and apply the law appropriately in making his decision that there was no denial of FAPE.

On these controlling points there exists no genuine issue of material facts and accordingly, Plaintiffs are entitled to summary judgment as a matter of law.

### BACKGROUND FACTS

This action seeks review of an administrative decision by a Hearing Officer issued on August 16, 2005, following a hearing conducted pursuant to the Individuals With Disabilities Education Improvement Act, 20 U.S.C. § 1400 *et seq.* Plaintiff T.T. is a ten year old disabled child receiving special education, who was formerly enrolled at Payne elementary School.

During her years at Payne, she was spending 100% of her school time out-of-general education. (AR. at 3). Specifically she was receiving 29.5 hours of specialized instruction; 1.5 hours of psychological counseling; and 1 hour of speech-language therapy. (AR at 6).

T.T. exhibited signs of behavioral and academic problems but was not identified until Norma Gales, the mother of T.T. completed a psychiatric evaluation on June 5, 2002 and submitted the evaluation to Defendant. (Plaintiff's Complaint at 3).

On June 29, 2005, Plaintiffs filed a due process hearing request alleging that DCPS violated the IDEA and denied T.T. a Free Appropriate Public Education (FAPE) by, *inter alia*, failing to perform psychiatric assessment to determine if T.T.'s ADHD impacted her academic performance; failing to provide T.T. IEP called for speech-Language evaluation and Counseling services in school year 2004-05; failing to include ADHD as her disability classification; failing to develop an appropriate IEP that included ADHD services; and failure to make an appropriate placement to implement her IEP in school year 2004-05. (AR at 3).

The due process hearing convened on August 4, 2005 wherein the parent and T.T.'s witness testified that T.T. was not making any academic progress at Payne Elementary School and that her IEP's were not addressing her problems. (AR at 370-380). T.T.'s records showed that her ADHD was impacting her education but it was never addressed neither was it included as one of her disabilities on her IEP. (AR at 372-374). Moreover, there was no functional behavioral assessment conducted to determine whether or not T.T.'s behavior intervention plan was appropriate. (AR at 374-375).

On August 15, 2006, the Hearing Officer issued a decision dismissing Plaintiffs complaint, and concluding *inter alia*, that DCPS met its obligation under IDEA because its action, implementing T.T.'s IEP during the 2004-2005 school year, classifying her as ED;

developing her 8/2/05 IEP; agreeing with the parent to convene a placement meeting to discuss the parent's proposed placements, is adequate to meet the educational needs of T.T. based on her 8/2/05 IEP. (AR at 14).

The Hearing Officer erroneously concluded that DCPS met its obligation under the IDEA despite the fact that the MDT determined that T.T.'s needs cannot be addressed at Payne Elementary but would be better addressed in a full-time therapeutic center with on-site crisis intervention and a psychologist. (AR at 7).

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1. T.T. is an African American female residing in the District of Columbia born on October 5, 1996.

2. Ms. Norma Gales, mother of T.T., noticed problems with T.T. and completed a psychiatric evaluation on T.T. on 06/05/02 and T.T. was diagnosed with ODD, Speech Disorder and Learning Disorder NOS. (AR at 105). Although the mother completed the evaluation in 2002 and the TAT on 1/15/03, DCPS did not complete the process until November 10, 2003. (AR at 9, 69-80, 174).

3. On 5/19/04, the team decided that T.T. needed to be somewhere other than Payne but did not have a placement and on 08/02/05, the team decided again that T.T. needed another placement but again, did not have another placement for her. (AR at 59, 202)

4. DCPS decided that a placement decision would be made once her documents are provided to the site review committee and they would determine a placement. Therefore, DCPS was making a decision as to placement without the participation of the parent. (AR at 355).

5. T.T.'s goals and objectives were the same for two years in a row. (AR at 377, 127, 142).

4

6.    T.T. was diagnosed with ADHD and it impacted her academic and social functioning. (AR at 127, 105-108, 191-193, 87-91).

7.    At the 04/29/05 MDT meeting, the team recommended that T.T receive intervention measures such as T'ai Chi, Yoga, or ballet to assist with her retention, inattentiveness, and distraction associated with her ADHD disability, and recommended that she may need medication, yet they failed to order a psychiatric evaluation or incorporate such recommendations on her IEP or provide her with the recommended services on her IEP. (AR at 191-193, 142-164, 374)

8.    DCPS failed to evaluate T.T. in all areas of suspected disability by not completing the psychiatric evaluation. (AR at 348-353).

9.    T.T.'s IEPs were not appropriately implemented because she was not provided appropriate placement where her special education instructions and related services will be provided. (AR at 7, 46).

10.   The MDT acknowledged that T.T.'s ADHD disability is having a tremendous effect on her academics but did not include the ADHD disability on her IEP so that she could be provided with the services. (AR at 142-164).

11.   T.T. had identical behavioral intervention plan for the entire period she attended Payne Elementary. (AR at 374).

12.   DCPS did not conduct a functional behavioral assessment to determine whether or not T.T.'s behavioral intervention plan was appropriate. (AR at 374-375).

13.   Sharon Millis testified based on her review of T.T.'s documents and evaluations and did not need to evaluate, teach or attend a meeting on behalf of T.T. in order for her testimony to be credited. (AR at 9, 368-380)

## ARGUMENT
## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered for the moving party when there is no genuine issue of material fact. In ruling on a motion for summary judgment, the trial court addresses two issues: (1) whether the pleading, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine dispute as to any material fact and (2) whether the movant is entitled to judgment as a matter of law. In addition, inferences to be drawn from underlying facts must be viewed in the light most favorable to the opposing party, and even if it is unlikely that the opposing party will not prevail at trial. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

In decision interpreting Rule 56, the United States Supreme Court has disapproved any continued reluctance by trial courts to grant summary judgment in appropriate cases stating:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the [rules of procedure] which are designed "to secure the just, speedy and inexpensive determination of every action."

*Celotex Corp. v. Cartarett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986)(citations omitted).

The IDEA provides for judicial review in state and federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. See 20 U.S.C. §1415(c). In conducting such review, the reviewing court "shall review the records of the administrative proceedings, shall hear additional evidence at the request of the party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §1415(e). District Court's review of a challenge to an administrative ruling brought under the Individuals with Disability Education Act (IDEA) base its decision on "preponderance of the evidence" in exercising its independent judgment at arriving at an

6

appropriate placement and programming decision. 20 U.S.C. §1415(i)(2)(B); See <u>Lenn v. Portland School Committee</u>, 998 F.2d 1083 (1st Cir. 1993). However, the "preponderance of the evidence" standard "is by no means an invitation for the court to substitute their own notions of sound educational policy for those of the school authorities which they review." <u>Board of Education of Hendrick Hudson Central School Dist. V. Rowley,</u> 458 U.S. 176, 206 (1982).

The party challenging the hearing officer's determination bears the burden of persuading the court that the Hearing Officer was incorrect. <u>Angevine v. Smith</u>, 959 F.2d 292, 295 (D.C. Cir. 1992); <u>Kerkam v. McKenzie</u>, 862 F.2d 884, 887 (D.C. Cir. 1988). While the Court is authorized to make an independent determination, the Court "must also give 'due weight' to the administrative proceeding and "defer to the hearing officer's factual findings based on credibility judgment unless the non-testimonial, extrinsic evidence on the record would justify a contrary conclusion." <u>S.H. v. State-Operated School Dist. Of the City of Newark</u>, 336 F.3d 260, 269-71 (3rd Cir. 2003) (citations omitted).

Accordingly, before this Court may reverse the Hearing Officer's decision, the Plaintiff must show by a "preponderance of the evidence," giving the Hearing Officer's finding "due weight" that the Hearing Officer was wrong.

### A. THE HEARING OFFICER ERRED BY DISMISSING PLAINTIFF'S DUE PROCESS COMPLAINT

When reviewing an administrative decision under the IDEA, the court must determine whether the procedural requirements were met and whether the IEP, including the student's placement, was reasonably calculated to enable the child to receive educational benefits. <u>Shaw v. Dist. of Columbia</u>, 238 F. Supp. 2d 127, 134 (D.D.C. 2002) (citing <u>Rowley</u>, 458 U.S. at 206-07). The IDEA imposes a "child-find" requirement on the states: their schools must have policies and procedures in place to identify, locate, and evaluate children with disabilities who need special

7

education and related services. 34 C.F.R. § 300.111(a)(1). Even children, who are only suspected of having a disability, although they are progressing from grade to grade, are protected by this requirement. 34 C.F.R. § 300.111(c).

20 U.S.C. §1414(c)(1)(A) provides that evaluation process begins with a review of the child's existing evaluations, information provided by parents, teacher and other service providers. According to 34 C.F.R. §300.125, DCPS must ensure that "all children with disabilities residing in the State . . . regardless of severity of their disability, and who are in need of special education and related services, are identified, located, and evaluated." Id. Under 34 C.F.R. §300.527, "an LEA must be deemed to have knowledge that a child is a child with a disability if the behavior . . . of the child demonstrates the need for these services . . . [or] the parent of the child has requested an evaluation of the child . . . ." Id. By law, the District of Columbia Public Schools must conduct such evaluation and find an appropriate placement within 120 days of the date they were notified of the child's disability. D.C. Code § 38-2501(a) & (b).

In the instant case, Plaintiff filled out a parental consent to evaluate T.T. on January 15, 2003; however, DCPS did not complete the required evaluation or comply with "child find" or 120-day process until more than eleven months later. Moreover, DCPS was put on notice in June 2002 when the parent initially submitted a copy of the independent psychiatric evaluation that was performed on T.T. yet DCPS did not complete the evaluation process until November 2003. (AR at 9, 19, 69-80, 174). Therefore, DCPS violated the child find statute and the 120-day time line under District of Columbia law.

Furthermore, the Hearing Officer concludes *inter alia* that DCPS did not violate the IDEA because "T.T.'s 8/2/05 IEP provides special education and related services based on her unique educational needs known to the BLMDT . . . " (AR at 10). "The Act requires that a child

who needs additional education in a school system be given the attention [she] needs throughout the duration of [her] IEP, not only in its evaluation and planning stages." <u>Argueta v. District of Columbia</u>, 355 F. Supp. 2d. 408, 414 (D.D.C. 2005). The Hearing Officer's conclusion is erroneous at least to the extent that any subsequent remedial measure on the 8/2/05 IEP, although not apparent, cannot cure a past or existing violation of the IDEA, which is the basis for Plaintiff's due process complaint. It is clear from T.T.'s past IEPs and his 8/2/05 IEP that the team was more focused on her emotional problems rather than the problems associated with her ADHD which the team agreed was impacting her education. Plaintiff submits that DCPS failure to conduct a functional behavioral assessment and its failure to include ADHD as one of T.T.'s evaluation is a violation of the IDEA.

     A plausible reading of the Hearing Officer's decision shows that he relies more on the 8/2/05 IEP and events that took place during the MDT meeting on 8/2/05 rather than violations that occurred during the period alleged in the Plaintiff's due process complaint which was prior to 8/2/05. Moreover, the Hearing Officer makes a conclusory statement that T.T. was not denied any service during the 2004-2005 school year because the parent and advocate were provided a copy of the student's encounter tracking form for 2004-2005. (AR at 12). Despite the fact that DCPS bears the burden of proof at the administrative hearing to prove that all IEP called for services were provided, no such document was offered into evidence by DCPS to show that all special education and related services were provided for 2004-2005. The mere fact that DCPS stated that they provided the 2004-2005 encounter tracking forms to parent and her advocate is not sufficient evidence for the Hearing Officer to conclude that all the eservices were provided. In fact, parent testified that not all the services were provided. (AR at 304-305).

In addition, the Hearing Officer *inter alia* contends that T.T.'s disability classification, IEP and proposed educational program are appropriate because the Psychologist reports states that "T.T.'s Emotional Distrubance diagnosis is appropriate due to the severity, intensity and frequency of her behaviors within the classroom. T.T's full-time ED placement is appropriate to address her oppositional and ADHD behavior.) (AR at 11). However, the Hearing Officer has failed to put into consideration the fact that exclusion of T.T.'s ADHD classification on her IEP would affect the special needs provided to her especially in light of the fact that she would be transferring to another school and nothing regarding the IEP should be left open to interpretation by the teachers at the new school or decided at a later time by a service provider. It is well settled that a child's IEP is the constitution guiding her education and a failure to include any information that would assist the school system in providing the child's specific needs is material and renders the IEP inappropriate. See Van Duyn ex rel. Van Duyn v. Baker Sch. Dist., 2005 U.S. Dist. LEXIS 44883, 2005 WL 50130, at *1 (D. Or. 2005). ("[A] child's IEP effectively is the 'constitution' guiding [her] special education.").

There is clearly a distinction between Emotional Disturbance and Other Health Impaired (ADHD) as defined under the 34 C.F.R. § 300.7(4) and (9). Therefore, the catch-all Emotional Disturbance classification stated on T.T.'s IEP cannot be sufficient to identify and provide all of T.T.'s ADHD special education and related services needs whether or not her behaviors are commonly linked to the Emotional Disturbance although that is not the situation here. The record is replete with the fact that T.T.'s ADHD seriously impacted her education and that the impact of her ADHD is distinguishable from her Emotional Disturbance. (AR at 127, 105-108, 191-193, 87-91, 67, 63-64, 372-374). Although behavior plans were drafted for T.T. while attending Payne, all three plans drafter over the years at Payne Elementary were identical. More telling is

the fact that no functional behavioral assessment was conducted to determine whether or not T.T.'s behavior plan was appropriate, especially where it was obvious that her problems were persistent and she was regressing in her academic work. (AR at 374-375). 34 C.F.R. 3003523(h) mandates that "in evaluating a child with a disability the evaluation must be sufficiently comprehensive to identify all of the child's special education and related services needs, whether or not commonly linked to the disability category in which the child has been classified." In Thomas v. District of Columbia, 407 F. Supp. 2d 102, 105 (D.D.C. 2005), the court held that "in the case of a child whose behavior impedes his or her learning or that of others, the IEP team shall consider 'when appropriate, strategies, including positive behavioral interventions, strategies, and supports to address that behavior.'" Id. (citing 20 U.S.C. § 1414(d)(3)(B)(i)). T.T.'s IEP was not appropriate and the Hearing Officer should not have found otherwise because an appropriate IEP describes the special needs of the student and the special education and related services to be provided the student, which is not present in the case *sub judice*. U.S.C.A. § 1414(d)(1)(A).

  Furthermore, the Hearing Officer erroneously concludes that neither the parent nor her advocate requested a Psychiatric assessment; and neither raised any concerns about the IEP when asked if they wanted to change it. (AR at 12). This reasoning is in clear contravention of the IDEA and holdings in this Circuit that require DCPS to identify and evaluate students in need of special education services and related services, whether or not parents have made any request, written or oral. Scott v. District of Columbia, 2006 U.S. Dist. Lexis 14900 (D.D.C. 2006) (reversing a HOD premised on erroneous finding of no denial of FAPE); Reid v. District of Columbia, 365 U.S. App. D.C. 234, 401 F.3d 516, 519 (D.C. Cir. 2005) (School districts may not ignore disabled students' needs, nor may they await parental demands before providing special

instruction.); Branham v. District of Columbia, 368 U.S. App. D.C. 151, 427 F.3d 7, 8 (D.C. Cir. 2005) (same). Therefore, the Hearing Officer's conclusion that the parent and advocate did not request Psychiatric evaluation is without merit and should have be considered in determining whether DCPS denied T.T. a FAPE.

T.T.'s teacher informed the MDT that T.T. has seen the same curriculum for two years in a row but yet Tiara could not remember and she does not perform class assignments because she continues to forget from day to day. The teacher also indicated that T.T. is not retaining the information like her classmates and peers. Ms. Gales informed the MDT that T.T. continues to perform significantly below grade level and that she has not seen any improvement in her academics and concurred with T.T's special education teacher that T.T. is not retaining the information learned at Payne ES. Moreover, it was uncontested that Payne Elementary was not an appropriate placement to implement T.T.'s IEP which had not adversely changed from the prior IEP except for the number of hours of special education. (AR at 11, 112-116, 232-241, 202-226, 302-341, 370-371). Therefore, T.T. was not progressing with the services at the placement that was being provided, hence denying her a FAPE.

Finally, the Hearing Officer erred by failing to credit the testimony of Plaintiff's witness Sharon Millis simply because "she never evaluated T.T., never taught or provided T.T. her specialized instruction or related services; never attended a meeting on the student's behalf, and most importantly, had never even met the student." (AR at 9). These reasons are not a proper basis to ignore testimony that is intended to support Plaintiff's claim that T.T. was denied FAPE. It would have been a different scenario assuming Ms. Willis testified without the benefit of reviewing documents regarding T.T. or that her testimony is not corroborated by the records she relied on. The Hearing Officer's decision to disregard her testimony is an abuse of discretion.

While the Court must give "due weight" to the Hearing Officer's decision, a decision without reasoned and specific conclusions deserves little deference. See <u>Reid v. District of Columbia</u>, 365 U.S. App. D.C. 234, 401 F.3d 516, 521 (D.C. Cir. 2005); <u>Lyons v. Smith</u>, 829 F. Supp. 414, 418 (D.D.C. 1993). Here, by ignoring Ms. Millis testimony, the Hearing Officer fails to consider the undisputed evidence, including the written IEPs themselves, which shows that T.T.'s IEPs for the two years prior to the hearing contain basically identical goals and objectives, there is no discussion of progress; her behavior plan has not changed since she has been at Payne Elementary, and the present levels on the IEP contain a different score from the evaluations relied on, and the IEP does not address her ADHD problems. (AR at 370- 378). Had the Hearing Officer considered her testimony he would have credited her testimony which is corroborated by the IEPs and evaluations that she references during her testimony, and subsequently found a denial of FAPE.

## **CONCLUSION**

WHEREFORE, the Plaintiffs respectfully requests this Honorable Court to grant plaintiff's motion for summary judgment, deny defendant's motion for summary judgment and issue an order directing DCPS to place T.T. at Accotink Academy. In addition, plaintiff requests that the Court set aside the HOD because it contravenes IDEA and settled case law. Furthermore, the court should grant the Plaintiff's request for attorneys' fees and costs for this action and the administrative proceedings.

                Respectfully Submitted,
                THE IWEANOGES' FIRM P.C.

By:      /JudeIweanoge/
                Jude C. Iweanoge, Bar #493241
                IWEANOGE LAW CENTER
                1026 Monroe Street, NE
                Washington, D.C. 20017
                Phone: (202) 347-7026
                Fax: (202) 347-7108
                Email: jci@iweanogesfirm.com