UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

T. T., <u>et al.,</u>                                    )

      Plaintiffs,                             )

              v.                             )          Civil Action No. 05-2259 (RMC)

DISTRICT OF COLUMBIA, <u>et al.</u>,          )

      Defendants.                           )

_____

### <u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT</u>

Come now defendants, District of Columbia and Clifford Janey, by counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and hereby respectfully move this honorable Court to grant summary judgment in their favor in the captioned action, and to deny the plaintiffs' motion for summary judgment.  As established by the accompanying supporting memorandum, the challenged administrative determinations under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. §1400 *et seq*. were entirely appropriate.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

<u>/s/ Edward P. Taptich</u>
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov

August 8, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

T. T., <u>et al.,</u>                                    )

      Plaintiffs,                              )

           v.                                  )          Civil Action No. 05-2259 (RMC)

DISTRICT OF COLUMBIA, <u>et al.,</u>          )

      Defendants.                            )
_____

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This action seeks review of an administrative decision by a Hearing Officer ("HO"), issued on August 16, 2005, following a hearing conducted pursuant to the Individuals with Disabilities Education Improvement Act, "IDEIA", on August 4, 2005.[1] The following issues were presented to the HO: whether DCPS failed to evaluate the student in all areas of suspected disability; whether DCPS failed to provide and implement an appropriate IEP and placement for the student, "by allegedly failing to perform T.T.'s Psychiatric Assessment to determine if her ADHD[2] impacted her academic performance;" whether DCPS failed to provide the student with the Speech-Language and Counseling services that were required by her IEP; whether DCPS failed to include ADHDS as the student's disability classification, failed to develop an appropriate IEP that included ADHD services and failed to make an appropriate

_____

[1] Plaintiffs filed an almost identical Complaint on February 2, 2006, appealing a Hearing Officer's Decision issued on November 7, 2005. *See T. T. v. District of Columbia,* Civ. No. 06-207 (D.D.C.).  That case was dismissed by Judge John D. Bates on July 23, 2007.
[2] Attention Deficit Hyperactivity Disorder

placement to implement the student's IEP in school year 2004-05, such that the student was denied a free appropriate public education ("FAPE"). (AR at 4) The HO concluded that there was no denial of FAPE and dismissed plaintiffs' complaint. (AR at 13) Plaintiffs appeal from that decision.

## **FACTUAL BACKGROUND**

The minor plaintiff is a ten-year old student who has been found eligible for special education services as a student with the disability classification of Emotionally Disturbed. (AR at 222) On August 2, 2005, DCPS convened a multidisciplinary team ("MDT") meeting, which consisted of the parent, a speech pathologist, school psychologist, general education teacher, IEP developer, an LEA/special coordinator, a social worker and the student's educational advocate. (AR at 218) On that date the team developed an individualized educational plan ("IEP") for the student that called for 100% of the time not in a general education setting, and which required 29.5 hours a week of specialized instruction, 1.5 hours weekly of psychological services and 1 hour weekly of speech/language therapy. (AR at 202, 223) The parent, who was present at the meeting, suggested that the student needed a full-time placement that has crisis intervention and a psychologist and staff on site. (AR at 222) The MDT/IEP team agreed to this type of placement. (AR. at 222) At the time of the hearing, August 4, 2005, two days after the first MDT/IEP meeting, no placement had been determined for the student, but a meeting for the sole purpose of discussing placement had been proposed. (AR at 283, 339)[3]

---

[3] On August 25, 2005, the MDT team reconvened to discuss and determine placement for the student. (AR at 232) DCPS offered the parent a choice of placement at either the Hamilton Center or the Taft Center, as full time therapeutic placements for students with an emotional disturbance. Both schools have full time social workers and a psychologist on staff. And both schools offer small class settings with a special education teacher and aide. (AR at 233)

## ARGUMENT

### I.     The criteria for granting summary judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Material facts are those "that might affect the outcome of the suit under the governing law." Farmland Industries, Inc. v. Grain Board of Iraq, 248 U.S. App. D.C.  276, 904 F. 2d 732, 735 (1990)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[4]

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[5]

---

However, the parent rejected both placements stating that she wanted the student placed at Accotink Academy, a private school, where the student had already been accepted.  (AR at 233, 234) Because DCPS believes that the placements they offered can meet the student's educational needs they issued a Prior Notice of placement to the Hamilton Center, which was the closer of the two public schools to the student's home.  (AR at 235)

The issue of placement at the Hamilton Center was the main issue litigated in *T. T. v. District of Columbia,* Civ. No. 06-207 (D.D.C. ) (July 23, 2007).  Judge John D. Bates dismissed plaintiffs' Complaint, finding *inter alia,* that the placement was appropriate.

[4] Anderson v. Liberty Lobby, Inc, supra, 477 U.S. at 248, similarly describes the rule for determining materiality:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinning of those disputes.

[5] Celotex Corp. v. Cantrett, supra, is one of three cases decided by the U.S. Supreme Court in 1986 that govern the standard for granting motions for summary judgment.  Celotex Corp., supra;  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Company v. Zenith Radio Corporation, 475 U.S. 574 (1986). Celotex Corp. held that Rule 56 was to be administered with due regard to those opposing claims, as well as those advancing them, and that the purpose of the Rule was to dispose of claims that had no reasonable factual basis. 477 U.S. at 327, 323. Anderson held that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. 477 U.S. at 248, 254.  Matsushita held that where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." 475 U.S. at 587.

To meet the initial burden of showing "the absence of a genuine issue of material fact" on an essential element of the non-movant's case, the movant may demonstrate that the respondent has no evidence to support an essential element of his or her case.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  In answer, the respondent must "present affirmative evidence" in order to defeat the motion, and "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion for summary judgment should be granted.  Id.

## II.    The criteria for review of administrative decisions under IDEA

IDEA provides for judicial review in state or federal court to "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(c).  In conducting such review, the reviewing court "shall receive the records of the administrative proceeding, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §1415(e).  However, the "preponderance of the evidence" standard "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  Board of Education of Hendrick Hudson Central School Dist. v. Rowley, 458 U.S. 176, 206 (1982).

The party challenging the hearing officer's determination bears the burden of persuading the court that the Hearing Officer was incorrect.  Angevine v. Smith, 959 F.2d

---

. . . [T]aken together, these three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials and lower courts have responded accordingly.

10 A. Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2727, n. 25 (1998).

292, 295 (D.C. Cir. 1992); <u>Kerkam v. McKenzie</u>, 862 F.2d 884, 887 (D.C. Cir. 1988);

<u>Lyons v. Smith</u>, 829 F.Supp. 414, 417 (D.D.C. 1993). While the Court is authorized to

make an independent determination, the Court "must also give 'due weight' to the

administrative proceeding and afford some deference to the expertise of the hearing

officer and school officials responsible for the child's education." <u>Lyons v. Smith</u>, *supra*,

829 F.Supp. at 418.

      Accordingly, before this Court may reverse the Hearing Officer's decision, the

Plaintiffs must show by a "preponderance of the evidence," giving the Hearing Officer's

finding "due weight," that the Hearing Officer was wrong.

### III.     <u>Compliance with "Child Find" Was Not an Issue in the Instant Due Process Hearing.</u>

On page 8 of Plaintiffs' Motion for Summary Judgment, plaintiffs allege that "DCPS

violated the child find statute and the 120-day time line under District of Columbia law."

(Motion at 8) However, this issue was only mentioned by plaintiffs' counsel in her

written closing statement. No testimony relating to this issue was given at the due

process hearing. The record contains three HODs issued prior to the one that is the

subject of this litigation--May 22, 2003, September 2, 2003, and October 12, 2004. The

issue of "child find" was not raised in any of those prior hearings. Accordingly, the HO

ruled correctly when he determined that "since the parent had three-prior HODs, she had

three opportunities to raise a Child Find violation of the IDEA. And, based on this

hearing record, she may have either compromised it to settle her 4/24/03 hearing request,

or simply failed to raise it even though the issue was ripe before the student was

evaluated and determined eligible for services, now 19-months ago." (AR at 9)

**IV.**     **Prior to Conducting The Student's IEP Meeting, The Parent and Her Advocate Agreed to the Student's Classification of "Emotionally Disturbed."**

In their motion, plaintiffs allege that because DCPS classified the student as emotionally disturbed ("ED"), but failed to also classify her as ADHD, the student's IEP is inappropriate. (Motion at 9 – 11)  What plaintiffs fail to state is that prior to conducting the student's IEP meeting, a determination was made by the MDT team, which included the parent and her advocate, that the student qualified under the IDEIA as an ED student, and the parent agreed with that determination. (AR at 222)  Neither the parent nor her advocate raised any objection to the goals and objectives of the IEP, nor did they suggest additional changes to the IEP. (AR at 345)

The classification by the MDT team was based in part on a review of the student's psychological evaluations.  As stated by the psychologist at the meeting: the "Emotional Disturbance diagnosis appears to continue to be appropriate due to the severity, intensity and frequency of [the student's] behaviors within the classroom."  (AR at 219)   While the student was "classified" as ED, the psychologist also took into account that the student had ADHD.  "[The student's] full-time ED placement is appropriate in order to address her oppositional behaviors as well as her ADHD behaviors."  (AR at 219) (Emphasis added)

At the MDT/IEP meeting the parent suggested that the student needed a full time placement where there was crisis intervention and a psychologist on the staff.  The DCPS members of the team concurred.  (AR at 223)  Further, the team increased the number of hours of specialized instruction and related services from 22.5 to 32 hours.  (AR at 307-308)  Thus, it is hard to understand how adding an additional classification of ADHD

would have impacted the type and amount of services the student was to receive.  The

student's IEP called for her to receive 29.5 hours a week of specialized instruction, 1.5

hours weekly of psychological services and 1 hour weekly of speech/language therapy.

(AR at 202, 223)  Accordingly, the HO was correct when he found that "T.T.'s disability

classification, IEP and proposed educational program are appropriate."  (AR at 11)

**V.      The Student Received Special Education and Related Service During
          School Year 2004-2005.**

Plaintiff alleges that the student did not receive all her special education and related

services during school year 2004-2005.  (Motion at 9)  However, Ms. Smith, special

education coordinator at Payne Elementary School, where the student attended, testified

that at the August 2nd IEP meeting, the parent's advocate was given a copy of the

student's Encounter Tracking Forms, for school year 2004-2005.  (AR at 344, 345)  "Ms.

Pressley was given the encounter/tracker forms for the 2004/2005 school year for all

services, that included the child being seen by Dr. Jones, school psychologist; she was

seen by the social worker, Ms. Dukes, and she was seen by Ms. Wendt the speech

therapist.  So all those people produced copies of their Medicaid for the 2004/2005

school year to show that services were provided."  (AR at 345)

Plaintiffs claim that the "mere fact that DCPS stated that they provided the 2004-2005

encounter tracking forms to [the] parent and her advocate is not sufficient evidence for

the Hearing Officer to conclude that all the services were provided."  (Motion at 9)

However, the HO credited the testimony of Ms. Smith that "[a]t the 08/02/05 MDT

meeting, the parent and advocate were provided a copy of the student's 2004-05

Encounter Tracking Forms when they sought Compensatory Education for missed

services.  The forms rebut the parent's claim T.T. missed her IEP called for services."

(AR at 8)

In general, "[f]indings of fact…shall not be set aside unless clearly erroneous, and

due regard shall be given to the opportunity of the trial court to judge the credibility of

the witnesses."  *Cooter & Gell v. Hartmarx Corp., et al.*, 469 U.S. 384, 400 (1990).

(Emphasis added)  "If the district court's account of the evidence is plausible in light of

the record viewed in its entirety, the court of appeals may not reverse it even though

convinced that had it been sitting as the trier of fact, it would have weighed the evidence

differently.  Where there are two permissible views of the evidence, the fact finder's

choice between them cannot be clearly erroneous."  *Inwood Laboratories, Inc., v. Ives*

*Laboratories, Inc.*, 456 U.S. 844, 857-858 (1982).   Here, the Hearing Officer had the

opportunity to listen to the testimony of all the witnesses and it is he who is in the best

position to judge their credibility.  Thus, the HO was correct in finding that the student

received her special education and related services as set forth in her IEP.

The HO was also correct in his determination to discount the testimony of Sharon

Millis, educational advocate, in her assessment of the student, on the grounds that "she

never evaluated the student; never taught or provided T.T. her specialized instruction or

related services; never attended a meeting on the student's behalf, and most importantly,

had never even met the student."  (AR at 9)

## VI.    Neither the Parent Nor Her Advocate Sought a Psychiatric Assessment of the Student.

Plaintiffs allege that the HO erred when he concluded that DCPS did not deny the

student a FAPE when it did not perform a psychiatric evaluation of the student.  (Motion

at 11)  Plaintiffs admit that neither the parent nor her advocate requested a psychiatric

evaluation, and neither one raised any concerns about the student's IEP.  (Motion at 11)

Further, plaintiffs' argument in support of their position is legally flawed. While it is true

that DCPS is required "to identify and evaluate students in need of special education

services and related services, whether or not parents have made any request"  (Motion at

11), this statement and the cases cited to support it, all relate to the "child find" portion of

the IDEIA.  In this case, the student has been identified and special services are being

provided to her.

### VII.    Plaintiffs' Claim Pursuant to Section 504 of the Rehabilitation Act of 1973 Must Be Dismissed.

While Count I of plaintiffs' Complaint alleges a violation of Section 504 of the

Rehabilitation Act, 29 U.S.C. Sec. 794, no reference is made to this claim in plaintiffs'

Motion for Summary Judgment.  Section 504 prohibits programs and entities that receive

federal funding from denying benefits to, or otherwise discriminating against, a person

"solely by reason" of that individual's handicap.  Id. Sec. 794 (a). To establish such a

violation of the Rehabilitation Act in the context of IDEIA, Plaintiffs must demonstrate

"something more than a mere failure to provide the "free and appropriate education"

required by IDEIA.  Lunceford v. District of Columbia Board of Ed., 745 F. 2d 1577, 1580

(D.C. Cir. 1984) (quoting Monahan v. Nebraska, 687 F.2d at 1170-71 (8th Cir. 1982); Sellers

v. Sch. Bd. Of Manassas, Va., 141 F.3d 524, 529 (4th Cir. 1998); R.S. v. District of

Columbia, 292 F. Supp. 2d 23, 28 (D.D.C. 2003); T. T. v. District of Columbia,  Civ. No.

06-207 (D.D.C.) (July 23, 2007).  Hence, Plaintiffs must show "[e]ither bad faith or gross

misjudgment…before a Section 504 violation can be made out…" Monahan, 687 F. 2d at

1170-71 (liability will not be imposed as long as the "state officials have exercised

professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals").

Here, neither plaintiffs' Complaint nor her Motion for Summary Judgment make any mention of either bad faith or gross misjudgment — the standard for a claim under Section 504. Accordingly, Plaintiff's failure to allege any facts or make any arguments whatsoever as to her Rehabilitation Act claim must result in its dismissal. See, Lavon Savoy-Kelly v. Eastern High School, supra, (slip op. at 10); T. T. v. District of Columbia, Civ. No. 06-207 (D.D.C.) (Memorandum Opinion, July 23, 2007 at 18-20)

### VIII.   Count IV of Plaintiffs' Complaint Must Be Dismissed

Plaintiffs allege in their Complaint that "Defendants violated IDEIA and denied Plaintiffs due process when it failed to consider school of parent's choice and did not include parent as part of the team to make placement decision for [T]". (Complaint at Count IV) No argument concerning this Count was proffered in plaintiffs' Motion for Summary Judgment, but was fully briefed in T. T. v. District of Columbia, Civ. No. 06-207 (D.D.C.) (July 23, 2007) As this is the identical issue that was decided and dismissed by Judge Bates in his Memorandum Opinion, dated July 23, 2007, it should likewise be dismissed here.

### CONCLUSION

For the reasons stated above, this Court should find that the HO correctly determined that the student was not denied FAPE, deny plaintiffs' Motion for Summary Judgment and grant defendants' Cross Motion for Summary Judgment.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2


/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov


August 8, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

T. T., <u>et al.</u>,                              )

      Plaintiffs,                         )

          v.                              )          Civil Action No. 05-2259 (RMC)

DISTRICT OF COLUMBIA, <u>et al.</u>,     )

      Defendants.                        )
_____

## <u>DEFENDANTS' STATEMENT OF PLAINTIFFS' MATERIAL FACTS THAT ARE DISPUTED.</u>

      Paragraph numbers below correspond to the paragraph numbers in the Plaintiffs' Statement of Material Facts.

    2.        Defendants dispute plaintiffs' material fact numbered 2.  Services delay between the time the parent signed a Consent to Evaluate on January 15, 2003, and the development of the student's initial IEP on November 10, 2003, was due, in part, to the parent not timely obtaining independent assessments as authorized in the student's 5/22/03 HOD and her 9/02/03 HOD.  (AR at 9, 31-39)

    3.        Defendants dispute plaintiffs' material fact numbered 3.  On August 2, 2005, DCPS convened a multidisciplinary team ("MDT") meeting on behalf of the student.  (AR at 218)  On that date the team developed an individualized educational plan ("IEP") for the student.  (AR at 202, 223) The parent, who was present at

the meeting, suggested that the student needed a full-time

placement that has crisis intervention and a psychologist and staff

on site.  (AR at 222)  The MDT/IEP team agreed to this type of

placement.  A date for a meeting for the sole purpose of discussing

placement was proposed. (AR at 283, 339)

4.          Defendants dispute plaintiffs' material fact numbered 4.  The issue

that "DCPS was making a decision as to placement without the

participation of the parent" has been litigated and dismissed in

T. T. v. District of Columbia,  Civ. No. 06-207 (D.D.C.)

(Memorandum Opinion, July 23, 2007).

5.          Defendants dispute plaintiffs' material fact numbered 5.  The

student's 4/20/05 IEP indicates that she mastered some of the goals

and objectives set forth in her 10/1/04 IEP.  (AR at 144, 145)

6.          Defendants dispute plaintiffs' material fact numbered 6.  ADHD

was one of a number of psychological diagnosis of the student

which could have impacted her academic and social functioning.

(AR at 105-108, 191-193, 87-91).

7.          Defendants dispute plaintiffs' material fact numbered 7.  At the

4/29/05 MDT meeting it was noted that the parent was not

interested in the student receiving medication.  (AR at 158)  The

parent also refused services referred by DCPS because the student

was participating in the Center for Mental Health.  (AR at 349)  At

the meeting it was determined that the student would receive 25

hours of specialized instruction a week, 1.5 hours of psychological services per week and 1 hour of speech/language therapy a week. (AR at 142).

8.  Defendants dispute plaintiffs' material fact numbered 8.  A psycho-educational report was completed on February 23, 2003. (AR at 105-108)  A clinical psychiatric review was completed by DCPS on May 7, 2003.  (AR. at 191-193)  A psychological evaluation was performed on September 11, 2003.  (AR at 87-91) DCPS did not refer the student for a psychiatric evaluation because the parent did not want the student on medication, despite the psychologist explaining why the child might benefit from medication.  (AR. at 349-350, 353)

9.  Defendants dispute plaintiffs' material fact numbered 9.  Plaintiffs' material fact numbered 9 references a hearing officer's decision issued on October 8, 2004.  (AR 41-49)  However, the instant case is an appeal of an HOD issued on August 16, 2005, following a hearing on August 4, 2005.  (AR. at 2-15)  On August 2, 2005, DCPS convened a multidisciplinary team ("MDT") meeting, which consisted of the parent, a speech pathologist, school psychologist, general education teacher, IEP developer, an LEA/special coordinator, a social worker and the student's educational advocate.  (AR at 218)  The parent suggested that the student needed a full-time placement that has crisis intervention and a

psychologist and staff on site.  (AR at 222)  The MDT/IEP team

agreed to this type of placement.

10.         Defendants dispute plaintiffs' material fact numbered 10.

Nowhere in the record is there any indication that any ADHD the

student may have was having a "tremendous effect" on the

student's academics.  (AR. at 1-384)  Prior to conducting the

student's IEP meeting, a determination was made by the MDT

team, which included the parent and her advocate, that the student

qualified under the IDEIA as an ED student, and the parent agreed

with that determination. (AR at 222)  Neither the parent nor her

advocate raised any objection to the goals and objectives of the

IEP, nor did they suggest additional changes to the IEP. (AR at

345)

11.         Defendants dispute plaintiffs' material fact numbered 11.  T.T.'s

behavioral intervention plans while at Payne Elementary School

were not identical.  (AR at 56-57, 132-133.)

12.         Defendants dispute plaintiffs' material fact numbered 12. On

4/8/03 a Social Work Report concerning the student was written,

indicating that T.T. was seeing a Behavioral Therapist once a week

for two hours.  (AR. at 120)  On May 7, 2003, a Clinical

Psychiatric Review of the student was performed to determine the

student's current level of emotional functioning and to make

recommendations consistent with her education needs and abilities.

(AR at 191-193)  On 9/11/03 the student underwent a psychological evaluation to determine her emotional functioning and its impact on her learning.  (AR.at 87-91)    Neither the parent nor her advocate requested a psychiatric evaluation, and neither one raised any concerns about the student's IEP.  (Plaintiffs' Motion for Summary Judgment at 11)

13.         Defendants dispute plaintiffs' material fact numbered 13.  The HO was correct in his determination to discount the testimony of Sharon Millis, educational advocate, in her assessment of the student, on the grounds that "she never evaluated the student; never taught or provided T.T. her specialized instruction or related services; never attended a meeting on the student's behalf, and most importantly, had never even met the student."  (AR at 9)

    Respectfully submitted,

    LINDA SINGER
    Attorney General for the District of Columbia

    GEORGE C. VALENTINE
    Deputy Attorney General, Civil Litigation Division

    /s/ Edward P. Taptich
    EDWARD P. TAPTICH [012914]
    Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov

August 8, 2007

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| T. T., <u>et al</u>., | ) |
| Plaintiffs, | ) |
| v. | )    Civil Action No. 05-2259 (RMC) |
| DISTRICT OF COLUMBIA, <u>et al.</u>, | ) |
| Defendants. | ) |

_____

## <u>STATEMENT OF DEFENDANTS' MATERIAL FACTS THAT</u><br><u>ARE NOT IN DISPUTE</u>

1. The minor plaintiff is a ten-year old student who has been found eligible for special education services as a student with the disability classification of Emotionally Disturbed ("ED").   (AR at 222)

2. At least three HODs concerning the student were issued prior to the one that is the subject of this litigation--May 22, 2003, September 2, 2003, and October 12, 2004.  The issue of "child find" was not raised in any of those prior hearings.  (AR. at 9, 31-49)  No testimony relating to the issue of "child find" was given at the August 4, 2005, due process hearing.  (AR. at 1-384)

3. On August 2, 2005, DCPS convened an Individualized Educational Plan ("IEP")/ multidisciplinary team ("MDT") meeting, which consisted of the parent, a speech pathologist, school psychologist, general education teacher,

20

IEP developer, an LEA/special coordinator, a social worker and the student's educational advocate.  (AR at 218)

4.  Prior to conducting the student's IEP/MDT meeting, a determination was made by the MDT team, which included the parent and her advocate, the student qualified under the IDEIA as an ED student, and the parent agreed with that determination. (AR at 222)

5.  At the IEP/MDT meeting the psychologist opined that the "Emotional Disturbance diagnosis appears to continue to be appropriate due to the severity, intensity and frequency of [the student's] behaviors within the classroom."  (AR at 219)

6.  The psychologist also concluded that the student's full-time ED placement was appropriate in order to address her oppositional behaviors as well as her ADHD behaviors. (AR at 219)

7.  On August 2, 2005, the MDT team developed an individualized educational plan ("IEP") for the student that called for 100% of the time not in a general education setting, and which required 29.5 hours a week of specialized instruction, 1.5 hours weekly of psychological services and 1 hour weekly of speech/language therapy.  (AR at 202, 223)  The team increased the number of hours of specialized instruction and related services found in her April 29, 2005, IEP, from 22.5 to 32 hours. (AR at 307-308)

8.  Neither the parent nor her advocate raised any objection to the goals and objectives of the IEP, nor did they suggest additional changes to the IEP. (AR at 345)

9.  The parent suggested at the MDT meeting that the student needed a full-time placement that has crisis intervention and a psychologist and staff on site. (AR at 222)  The MDT/IEP team agreed to this type of placement.  (AR. at 222)

10. DCPS offered the parent a choice of placement at either the Hamilton Center or the Taft Center, as full time therapeutic placements for students with an emotional disturbance.   Both schools have full time social workers and a psychologist on staff, and offer small class settings with a special education teacher and aide.  (AR at 233)

11. At the August 2, 2005, IEP meeting, the parent's advocate was given a copy of the student's Encounter Tracking Forms, which indicate the services provided the student for school year 2004-2005.  (AR at 344, 345)  The services included the child being seen by Dr. Jones, the school psychologist, the social worker, Ms. Dukes, and Ms. Wendt, the speech therapist. (AR at 345)

12. Sharon Millis, the student's educational advocate never evaluated the student; never taught or provided the student her specialized instruction or related services; never attended a meeting on the student's behalf, and never met the student. (AR at 378-379)

13. Neither the parent nor her advocate requested a psychiatric evaluation nor raised any concerns about the student's IEP.  (Plaintiffs' Motion at 11)

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2


/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 442-9842
FAX - (202) 727-3625
E-mail – maria.merkowitz@dc.gov

August 8, 2007